IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PARVIN FOROOZESH,                          )
                                           )
                 Plaintiff,                )
                                           )
        v.                                 )      2:03cv1703
                                           )
LOCKHEED MARTIN OPERATIONS                 )
SUPPORT, INC., a/k/a LOCKHEED              )
MARTIN TECHNOLOGY SERVICES,                )
                                           )
                 Defendant.                )

**MEMORANDUM OPINION AND ORDER OF COURT**

Before the Court for consideration and disposition is a MOTION FOR

RECONSIDERATION (*Document No. 66*) filed by defendant Lockheed Martin Operations

Support, Inc. ("Defendant") and PLAINTIFF'S REPLY TO DEFENDANT'S MOTION FOR

RECONSIDERATION (*Document No. 67*).  The issues have been fully briefed, and the matter is

ripe for disposition.  For the reasons which follow, the Motion for Reconsideration will be

denied.

Standard of Review

Generally speaking, a motion for reconsideration will only be granted if: (1) there has

been an intervening change in controlling law; (2) new evidence, which was not previously

available, has become available; or (3) necessary to correct a clear error of law or to prevent

manifest injustice.  *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985), *cert. denied*, 47

U.S. 1171 (1986).  The Court fails to see how the Motion fits any of these situations.

Nevertheless, the Court will consider and decide the Motion based on the merits of the parties'

positions.

Background

Plaintiff Parvin Foroozesh ("Plaintiff") was employed by Defendant as a LAN/WAN

Administrator.  Her job was to provide computer support services to the Federal Aviation

Administration ("FAA") under the National Airspace Systems Implementation Support Contract II ("NISC II").  She worked primarily at an FAA facility, and while working at that facility she was allegedly subjected to unlawful harassment by Richard Leonard ("Leonard"), who was employed by the FAA.  On December 18, 2000, Plaintiff complained about the mistreatment by Leonard to Defendant and the FAA.  Leonard was sent to sensitivity training by the FAA, and Plaintiff conceded at her deposition that Defendant's response to the complaint was reasonable.  Nevertheless, Leonard continued to harass Plaintiff.  Plaintiff later complained about Leonard's continued harassment to Dan Hamilton, who was her immediate supervisor.  Hamilton made no response to the complaint, and he was obligated to, but did not, inform Frank Merrick, Defendant's human resources officer, of the continued harassment.  Interestingly, Hamilton was *not* employed by Defendant, but was employed by TRW, Inc., which was another company involved in the NISC II contract.

In January of 2002 Plaintiff was terminated due to FAA budget cuts.  She filed an action under Title VII of the Civil Rights Act of 1964 which alleged claims for gender and national origin discrimination, a hostile work environment and unlawful retaliation.  A Motion for Summary Judgment filed by Defendant was granted in part and denied in part.  The only remaining claims in this action are for 1) a hostile work environment based on harassment by Leonard, and 2) retaliation based on the creation of a hostile work environment by Leonard.  The Motion for Reconsideration presents a novel issue regarding whether Plaintiff's post-December 18, 2000 complaints to Hamilton (who worked for TRW, Inc.) about continued harassment by Leonard (who worked for the FAA) is sufficient to charge Defendant with actual or constructive notice of the continued harassment.  The Motion for Reconsideration also raises another novel issue regarding what evidence a court may consider when an employer makes an allegedly reasonable response to harassment, yet the harassment continues.

Discussion

A.      Whether Defendant Had Notice of Plaintiff's Continued Harassment by Richard Leonard

Defendant contends that although Dan Hamilton was Plaintiff's "task order manager," he was employed by TRW, Inc., which was another company involved in the federal "NISC II" contract under which Plaintiff was employed. Therefore, according to Defendant, "there is no basis for concluding that [Plaintiff's] alleged complaints to Hamilton constituted *actual notice by* (*sic*) [Defendant] of a hostile work environment." Motion at 5 (emphasis in original).

The fact that Hamilton was employed by TRW was never brought to light in the parties' summary judgment filings, and given the circumstances[1] the Court assumed that Hamilton was employed by Defendant. Therefore, the Court found that a complaint by Plaintiff to Hamilton was "sufficient for a reasonable fact finder to find that Defendant had actual notice of post-complaint harassment by Leonard ..." Memorandum Opinion at 19. "Hamilton was supposed to report these comments to Merrick, but he apparently failed to do so, and he apparently failed to take any action to correct the situation." *Id*. (citing Plaintiff's deposition at 211-12).[2] Thus, it appears that because Hamilton was *not* employed by Defendant, no one who was *actually employed* by Defendant had *actual notice* of the continued harassment to which Plaintiff was subjected after December 18, 2000. However, constructive notice will suffice. In *Kunin v. Sears Roebuck and Co.*, 175 F.3d 289, (3d Cir. 1999), the Third Circuit held that "there can be constructive notice in two situations: where an employee provides management level personnel with enough information to raise a probability of sexual harassment in the mind of a reasonable employer, or where the harassment is so pervasive and open that a reasonable employer would have had to be aware of it." *Kunin*, 175 F.3d at 294. *Kunin* does not address whether notice can

---

[1] Hamilton certainly appeared to be one of Defendant's employees. Among other relevant facts, he was Plaintiff's immediate supervisor, made the decision to place her on a performance improvement plan, and ultimately made the decision to terminate her employment with Defendant.

[2] Unlike Hamilton, Merrick was actually employed by Defendant as a human resources manager.

3

be imputed to an employer where the employee specifically complains about harassment to her supervisor, yet the supervisor is actually employed by another company.  The Court has found no case precisely on point.  However, it appears that Plaintiff's complaint to Hamilton is sufficient to impute constructive notice to Defendant.  First, Hamilton was Plaintiff's supervisor regardless of who issued his paycheck, and the evidence of record reflects that Defendant acquiesced in and exerted control over his supervision of Plaintiff.  *See*, *e.g.*, Hamilton dep. at 10 (Q: "If Dan Courain [of Lockheed Martin] instructed you to do something in your job position, is that something you would be required to do?"; A: "Sure.  The answer is yes."); *see also id.* ("I followed all of the Lockheed Martin policies and procedures relative to this contract.").  Indeed, and among other relevant facts, Hamilton made the determination that Plaintiff's employment would be terminated.  Second, there is no authority for the proposition that an employer can insulate itself from Title VII liability by allowing an employee of another company to supervise its own employees.  Under these circumstances, where Defendant has allowed an employee of another company to supervise and terminate one of its own employees, the Court observes that actual notice to the designated supervisor may be imputed as constructive notice to Defendant.  This conclusion is further reinforced by the fact that Hamilton was charged with the duty to report incidents of harassment to Merrick, Defendant's HR manager, and by Hamilton's own testimony that in the event of a complaint about an FAA employee, he would inform the appropriate FAA personnel and the complainant's HR manager.  Hamilton dep. at 43-44.

Defendant also contends that Plaintiff did not act reasonably in complaining about harassment after December of 2000 because she did not complain about harassment through the appropriate HR manager under the NISC II contract.  Motion at 5-6.  In support of its argument, Defendant cites *Kunin*, *supra*, and *Ogden v. Keystone Residence*, 226 F. Supp. 2d 588 (M.D. Pa. 2002).  Unlike this case, however, in *Kunin* the plaintiff's shortcoming was that her complaint about a co-worker's "cursing" failed to "communicate that the offensive language had sexual overtones," and therefore was insufficient to place the employer on constructive notice of sexual harassment.  *Kunin*, 175 F.3d at 294.  In *Ogden*, the plaintiff "was aware of the anti-harassment procedures, but she failed to utilize the complaint process," and "may have mentioned [her

supervisor's] conduct to her immediate supervisors, [but] did not ask them to follow up on her complaints." *Ogden*, 266 F. Supp. 2d at 602.  The district court held that these facts established the affirmative defense to a hostile work environment *created by a supervisor* under *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) which requires an employer to demonstrate "two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior; and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Faragher*, 524 U.S. at 807.  *Ogden* is distinguishable because it involved harassment by a supervisor, not a co-worker, and therefore the affirmative defense available under *Faragher* is not at issue in this case.  Additionally, unlike the plaintiff in *Ogden*, in this case Plaintiff was aware of and actually availed herself of formal complaint procedures on December 18, 2000, yet despite her complaint the harassment allegedly continued.  Therefore, neither *Kunin* not *Ogden* provides a basis to reverse the Court's earlier decision.

B.      Whether Plaintiff's Treatment by Leonard was "Severe" or "Pervasive"

In order to hold an employer liable for a hostile work environment, the plaintiff must show, *inter alia*, that the harassment was severe or pervasive.  *Jensen v. Potter*, 435 F.3d 444, 449 n.3 (3d Cir. 2006).  The Court has already found that "[t]he harassment that Plaintiff suffered at the hands of Leonard was, viewed in the light most favorable to Plaintiff, sufficiently pervasive to support a cause of action" for a hostile work environment and "hostile work environment" retaliation, but Defendant raises the issue again.  Memorandum Opinion at 18.  Defendant cites *Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535 (7th Cir. 2002),[3] as well as two recent, unreported Memorandum Opinions authored by the Honorable Sean J. McLaughlin of this court.  The Court has examined these non-precedential opinions and finds them to be distinguishable.  Unlike the instant case, in *Peters*, "many of the actions that [the plaintiff] identifie[d] were not directed at him." *Peters*, 307 F.3d at 552.  In fact, the plaintiff in

---

[3] Defendant represents that *Peters* was decided by the Third Circuit, which is not correct.

*Peters* could "point[] only to three [discriminatory incidents] that were directed towards or involved him," all of which were isolated and/or not overtly discriminatory. *Id*. The same can be said of the two cases decided by Judge McLaughlin.

Defendant also contends that because it allegedly made a reasonable response to Plaintiff's December 18, 2000 complaint, "her hostile work environment claim is limited to alleged incidents of harassment which occurred, and of which she complained, after December 18, 2000." Motion at 2 n.1. Defendant seems to contend that its allegedly reasonable response "wipes the slate clean," and only post-complaint harassment by Leonard can be considered to determine whether the harassment was sufficiently "severe or pervasive."[4] Defendant cites no authority for this particular proposition in its Motion, and the Court has found no such authority through its own independent research.

The relevant inquiry is not whether Plaintiff subjectively believed that her employer's (or anyone else's) response to her complaint was "reasonable." Instead, whether an employer's response to a complaint shields it from liability turns on whether it *actually stopped* the harassment.[5] *Se*e *Weston v. Pennsylvania*, 251 F.3d 420, 427 (3d Cir. 2001) ("an effective grievance procedure - one that is known to the victim and that timely stops the harassment - shields the employer from Title VII liability for hostile [work] environment. Moreover, when an employer's response stops the harassment, there can be no employer liability under Title VII.") (citations omitted). There is sufficient evidence of record from which a reasonable fact finder could conclude that Defendant's response to Plaintiff's formal December 18, 2000 complaint and later "informal" complaints to Hamilton did not stop Leonard's continued harassment. The Court also questions Defendant's contention that its response was reasonable because, according

---

[4] Plaintiff's deposition seems to indicate that Leonard's harassment was more abrasive *prior to* her formal complaint on December 18, 2000. After December 18, 2000, much of Leonard's harassment apparently arose out of his contempt for having to attend sensitivity training.

[5] Defendant was admittedly not in the best position to stop the harassment. Leonard and Plaintiff worked in an FAA facility, Leonard was not employed by Defendnt, and Defendant apparently had no supervisory employees of its own at Plaintiff's place of work.

to Plaintiff, it did not stop the harassment.  Therefore, Court finds no valid basis to reverse its earlier decision.

<u>Conclusion</u>

For the reasons hereinabove set forth, Defendants' Motion for Reconsideration will be denied.  An appropriate Order follows.

McVerry, J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **PARVIN FOROOZESH,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | )   **2:03cv1703** |
| **LOCKHEED MARTIN OPERATIONS** | ) |
| **SUPPORT, INC., a/k/a LOCKHEED** | ) |
| **MARTIN TECHNOLOGY SERVICES,** | ) |
| | ) |
| **Defendant.** | ) |

## ORDER OF COURT

AND NOW, this 1st day of June, 2006, it is hereby ORDERED, ADJUDGED and

DECREED that Lockheed Martin Operations Support, Inc.'s Motion for Reconsideration

(*Document No. 66*) is **DENIED**.


BY THE COURT:


s/ Terrence F. McVerry
United States District Court Judge


cc:   James J. Brink, Esquire                      John Newborg, Esquire
      Email: james.brink@att.net                   Email: jdnewborg@aol.com

      Jay D. Marinstein, Esquire                   Patrick L. Abramowich, Esquire
      Email: jmarinstein@foxrothschild.com         Email: pabramowich@foxrothschild.com