IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PARVIN FOROOZESH, | ) |
| Plaintiff, | ) |
| v. | ) 2:03cv1703 |
| LOCKHEED MARTIN OPERATIONS SUPPORT, INC., a/k/a LOCKHEED MARTIN TECHNOLOGY SERVICES, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER OF COURT**

Before the Court for consideration is the question of whether a jury trial must be held in this case and the damages which Plaintiff may seek to recover. Plaintiff is precluded from recovering non-economic damages by stipulation. The only remaining claim in the case is for a hostile work environment, for which Plaintiff contends that she should be entitled to submit a claim for post-termination lost wages to the jury on a "subordinate bias" theory. This issue arose during a discussion regarding damages at the pretrial conference. Although no formal motion is pending, the parties have submitted the following briefs at the Court's direction: LOCKHEED MARTIN OPERATIONS SUPPORT, INC.'S BRIEF IN OPPOSITION TO PLAINTIFF'S CLAIM FOR LOST WAGES AND BENEFITS (Document No. 71), PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF SUBMITTING TO THE JURY PLAINTIFF'S LOST INCOME CLAIM (Document No. 72), LOCKHEED MARTIN OPERATIONS SUPPORT, INC.'S REPLY BRIEF IN OPPOSITION TO PLAINTIFF'S CLAIM FOR LOST WAGES AND BENEFITS (Document No. 73), and PLAINTIFF'S REPLY TO DEFENDANT'S BRIEF OPPOSING THE PRESENTATION OF PLAINTIFF'S WAGE LOSS CLAIM TO THE JURY (Document No. 74). The Court will regard this matter as a renewed motion for summary judgment by Defendant pursuant to Fed. R. Civ. P. 56(b). Plaintiff has also filed a MOTION TO STRIKE DEFENDANT'S REPLY BRIEF (Document No. 75), and Defendant has filed a RESPONSE TO PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S REPLY BRIEF (Document No. 76). The issues have been fully briefed, and the matters are ripe for disposition.

For the reasons which follow, the Court concludes that the lost wages claim should be presented to a jury. Plaintiff's Motion to Strike Defendant's Reply Brief will be denied.

Background

The factual background is set forth at length in the Court's March 24, 2006 Memorandum Opinion and Order and will not be repeated in full here. Briefly, Parvin Foroozesh ("Plaintiff") was employed by defendant Lockheed Martin Operations Support ("Defendant") as a LAN/WAN administrator supporting a contract with the Federal Aviation Administration ("FAA"). Plaintiff is a female of Iranian descent, with a bachelor's degree in computer science and is certified as a Novell network administrator. Under the arrangement between Defendant and the FAA, a "government technical interpreter" ("GTI") employed by the FAA interacted closely with Plaintiff. The GTI was not authorized to direct Plaintiff how to perform her responsibilities, but rather presented tasks and requested completion dates.. GTIs are not supervisors of Defendant's employees, do not have the authority to hire, fire or discipline them, and may not project a supervisory relationship over them. At all relevant times Plaintiff's immediate supervisor or "task order manager" was Dan Hamilton ("Hamilton"), whose office was in New York. Michael Hester was another LAN/WAN administrator located in the Pittsburgh office, who also reported to Hamilton.

GTI Richard Leonard allegedly engaged in conduct towards Plaintiff which may have constituted a hostile work environment. Leonard also complained to Hamilton about Plaintiff's performance. On or about November 26, 2001, Leonard visited Hamilton at Hamilton's office in New York. Issues regarding Plaintiff's time and attendance were discussed, and Leonard mentioned that Plaintiff's technical performance was substandard. Leonard also reported that several FAA managers, including James Cook, Leonard Smith and David Smith, did not want Plaintiff back at their facilities, a contention which Plaintiff refutes. Hamilton asked Leonard to document the complaints, and the next day Leonard sent him an e-mail which described the complaints.

Beginning February 1, 2002, the FAA reduced operational funding, which required

Defendant to eliminate one of the two LAN/WAN administrator positions which were held by Plaintiff and Hester.[1]   Leonard had no official role in the decision.  Plaintiff's employment was terminated as of January 31, 2002.

Plaintiff has stipulated that she is not pursuing any claim for non-economic damages. Therefore, the only damages that a jury could award are for lost wages resulting from the loss of her position.  Plaintiff contends that her termination was caused by Leonard's discriminatory conduct.

### Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure reads, in pertinent part, as follows:

> [Summary Judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

An issue of material fact is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The court must view the facts in a light most favorable to the non-moving party, and the burden of establishing that no genuine issue of material fact exists rests with the movant. *Celotex*, 477 U.S. at 323.  The "existence of disputed issues of material fact should be ascertained by resolving all inferences, doubts and issues of credibility against the moving party." *Ely v. Hall's Motor Transit Co.*, 590 F.2d 62, 66 (3d Cir. 1978) (*quoting Smith v. Pittsburgh Gage & Supply Co.*, 464 F.2d 870, 874 (3d Cir. 1972)).  Final credibility determinations on material issues cannot be made in the context of a motion for summary judgment, nor can the district court weigh the evidence. *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632 (3d Cir. 1993).

---

[1] As the Court noted in its March 24, 2006 Opinion, there is evidence that in some instances Plaintiff's technical abilities exceeded those of Hester, and that Hester was out of the office fairly often.  However, there is no evidence that anyone complained about Hester due to deficient performance, time and attendance, or for any other reason.

Discussion

1. Motion to Strike Reply Brief

As an initial matter, Plaintiff's Motion to Strike Defendant's Reply Brief will be denied. Plaintiff objects to Defendant's citation of a non-precedential Third Circuit opinion, *Foster v. New Castle Area School Dist.*, 98 Fed. Appx. 85 (3d Cir. 2004). Citation to such non-precedential opinions is permissible. *In re Grand Jury Investigation*, 445 F.3d 266, 276 (3d Cir. 2006). The Court recognizes that *Foster* is not binding. Indeed, for the reasons set forth below, the Court will not follow *Foster* and will apply a test that is more favorable to Plaintiff.

2. Presentation of Lost Wages Claim to Jury

The issue before the Court is whether Plaintiff can recover lost wages as damages, due to an allegedly hostile work environment caused by a non-decisionmaker, when the Court has determined as a matter of law that the actual decisionmaker did not discriminate in the decision to terminate her. Plaintiff asserts that this theory of recovery has been explicitly recognized under the rubric "subordinate bias" cases. The parties did not raise and the Court did not address this theory in its earlier opinion.

The "subordinate bias" theory has been recognized by all the circuit courts that have considered the issue, but a circuit split exists as to the proper standard for applying the "subordinate bias" theory to the facts. Both parties have cited to and relied upon *EEOC v. BCI Coca-Cola Bottling Co. of Los Angeles*, 450 F.3d 476 (10th Cir. 2006) ("*BCI*"), which contains the most recent and extensive discussion of the "subordinate bias" theory. Two analogies have been used to describe the theory. The term "cat's paw" involves a situation in which a biased subordinate who lacks decision-making authority "uses the formal decisionmaker as a dupe in a deliberate scheme to trigger a discriminatory employment action." *Id.* at 484. The term "rubber stamp" refers to a situation in which a decisionmaker "gives perfunctory approval for an adverse employment action explicitly recommended by a biased subordinate." *Id.* In either scenario, an employer may be held liable for a subordinate's prejudice even if the decisionmaker lacked discriminatory intent. *Id.* at 485.

The circuit courts have applied at least three distinct approaches in implementing the "subordinate bias" theory. At one end of the spectrum, in *Dey v. Colt Constr. & Devp. Co.*, 28 F.3d 1446 (7th Cir. 1994), the Seventh Circuit stated that summary judgment would not be proper "where the plaintiff can show that an employee with discriminatory animus provided factual information or other input that **may have affected** the adverse employment action." *Id.* at 1459 (emphasis added); *see also Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 226 (5th Cir. 2000) (plaintiff must show that discriminatory had "influence or leverage over the official decisionmaker"). At the other extreme, the Fourth Circuit concluded in *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277 (4th Cir. 2004) (en banc), that an employer cannot be held liable even if the biased subordinate exercises "substantial influence" or plays a "significant" role in the decision. Instead, a plaintiff must prove that "the subordinate **is the actual decisionmaker**." *Id.* at 290-91 (emphasis added). In *BCI*, the Tenth Circuit adopted a middle ground test: "whether the biased subordinate's discriminatory reports, recommendation, or other actions **caused** the adverse employment action." 450 F.3d at 487 (emphasis added).

The Third Circuit has adopted a standard toward the more lenient end of the spectrum. In *Abramson v. William Patterson College of New Jersey*, 260 F.3d 265 (3d Cir. 2001), the Court held: "it is sufficient if those exhibiting discriminatory animus **influenced or participated in the decision to terminate**." *Id.* at 286 (emphasis added). In *Abramson*, the Court cited *Roebuck v. Drexel University*, 852 F.2d 715, 727 (3d Cir. 1988), for the proposition that a jury might permissibly conclude that a discriminatory evaluation at any level influenced the decision-making process and thus allowed discrimination to infect the ultimate decision. 260 F.3d at 286. In *Abramson*, the Court reversed a grant of summary judgment because two subordinates displaying discriminatory animus "played a role" in the decision. Defendant's efforts to distinguish *Abramson* factually do not enable this Court to apply a different legal standard.

Defendant points out that in *Foster*, a more recent Third Circuit case, the panel found the Fourth Circuit's analysis in *Hill* to be "both applicable to this case and persuasive." 98 Fed. Appx. at 88. In *Foster*, the Court held that an employer would not be liable for the improperly motivated person "who merely influences the decision," but only for the actual decisionmaker.

5

*See also Russ-Tobias v. Pennsylvania Board of Probation and Parole*, 2006 WL 516771 *26-27 (E.D. Pa. March 2, 2006) (citing *Foster* and *Hill* and applying "actual decisionmaker" test).  The Court recognizes the conflict between *Foster* and *Abramson*.  However, *Foster* is a non-precedential opinion and the Court is bound to follow *Abramson*.

Applying the *Abramson* standard to the facts of this case, it is clear that Plaintiff's claim survives summary judgment.  Although Leonard was not the actual decisionmaker, he did have participatory input to Hamilton which very well may have influenced the decision to terminate Foroozesh rather than Hester as part of the reduction-in-force.  Leonard was physically located in the same office as Foroozesh and Hester, while Hamilton was located in New York and had limited contacts with them.  Leonard brought the time and attendance issues to Hamilton's attention; related negative comments about Plaintiff's performance, purportedly from managers in Elkins and Clarksburg, West Virginia, that Plaintiff alleges are false; and solicited negative reports about Plaintiff's performance from selected field offices.  Leonard also solicited people to forward emails to Warren Herman of the FAA regarding Plaintiff, which Herman then relayed to Hamilton.  Leonard had also voiced his own complaints about Plaintiff's performance to Hamilton.

In sum, a jury could reasonably conclude that Leonard's input to the decision was discriminatory and that Leonard's input was an influencing factor in Hamilton's ultimate decision to terminate Plaintiff rather than Hester.  Defendant will be afforded the opportunity to persuade the jury that Leonard's input did not affect the termination decision because Hamilton objectively evaluated the strengths and weaknesses of Plaintiff and Hester and concluded that Hester was the better overall candidate.  Defendant is not entitled to judgment as a matter of law on the "subordinate bias" theory.

## Conclusion

For the reasons hereinabove set forth, Plaintiff will be permitted to present her claim for post-termination lost wages to the jury, based on a "subordinate bias" theory.  An appropriate Order follows.

McVerry, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **PARVIN FOROOZESH,** | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) 2:03cv1703 |
| **LOCKHEED MARTIN OPERATIONS SUPPORT, INC., a/k/a LOCKHEED MARTIN TECHNOLOGY SERVICES,** | ) ) ) ) ) |
| **Defendant.** | ) |

### ORDER OF COURT

AND NOW, this 10th day of October, 2006, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED and DECREED** that Plaintiff's MOTION TO STRIKE DEFENDANT'S REPLY BRIEF (Document No. 75), is **DENIED**. It is further **ORDERED** that Defendant is not entitled to judgment as a matter of law on Plaintiff's "subordinate bias" theory and that Plaintiff is entitled to present her claim for post-termination lost wages under said theory to the jury.

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge

cc:   James J. Brink, Esquire
      Email: james.brink@att.net
      John Newborg, Esquire
      Email: jdnewborg@aol.com

      Jay D. Marinstein, Esquire
      Email: jmarinstein@foxrothschild.com
      Patrick L. Abramowich, Esquire
      Email: pabramowich@foxrothschild.com